UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JERRY G. ALLEN, )
 )
    Petitioner, )
 )
v. ) No. 1:07-CV-35/1:03-CR-115
 ) Chief Judge Curtis L. Collier
UNITED STATES OF AMERICA, )
 )
    Respondent. )
 )
 )

## MEMORANDUM

*Pro se* petitioner Jerry G. Allen ("Petitioner") filed a petition to vacate his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 78).[1] Pursuant to the Court's Order (Court File No. 79), the United States filed a response (Court File No. 80). Petitioner then filed a reply (Court File No. 83).

Petitioner seeks relief under § 2255 on two separate grounds. First, Petitioner claims his guilty plea was unknowing and involuntary and his signature on the written plea agreement was forged. Second, he claims he received ineffective assistance of counsel during plea negotiation and during the rearraignment and sentencing hearings.

The Court finds the materials thus submitted, together with the record of the underlying criminal case, conclusively show Petitioner is not entitled to relief on either of the claims asserted in his petition. First, because Petitioner argued his guilty plea was unknowing and involuntary on his direct appeal, the Court finds Petitioner is not entitled to relitigate this issue under the circumstances of this case. Second, the Court finds Petitioner's assertions concerning his counsel's

---

[1] All citations are to case number 1:03-CR-115.

conduct fail to meet the requirements for constitutionally ineffective assistance of counsel, because Petitioner's assertions both lack credibility and are directly refuted by affidavits submitted by the government. Accordingly, the Court will decide this matter without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY** Petitioner's motion.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Petitioner was originally charged on two counts (Indictment, Court File No. 13). Count one of the indictment alleged Petitioner conspired to distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), 846(b)(1)(A) and 846. Count two of the indictment alleged Petitioner possessed with intent to distribute five hundred grams or more of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).

On July 10, 2003, before this very Court and pursuant to a written plea agreement (Court File No. 35), Petitioner pleaded guilty to count one of the indictment–that is, conspiracy to distribute five kilograms or more of cocaine (Court File No. 34). On October 24, 2003, this Court accepted the written plea agreement and sentenced Petitioner to 120 months of imprisonment followed by five years of supervised release (Court File No. 44). Petitioner appealed this sentence and the United States Court of Appeals for the Sixth Circuit affirmed (Court File No. 76).

In that appeal and again here, Petitioner contends his plea of guilty to count one was not knowing and voluntary and his signature on the written plea agreement was forged. According to Petitioner, during plea negotiations his appointed counsel, Frederick L. Ortwein, presented him with a written plea agreement in which he would agree to plea guilty to count two–not count one–of the indictment (Court File No. 78, at 5). Along with this plea agreement, his counsel allegedly made

certain oral assertions regarding the "sentencing exposure" such a conviction would carry. Based on these assurances, Petitioner states he signed the plea agreement and agreed to enter a guilty plea to count two.

Petitioner changed his plea to guilty at a rearraignment held on July 10, 2003. At the rearraignment, Petitioner asserts his counsel advised him "to just say yes to everything the Judge may ask [him], plead guilty, and not make the Judge mad by asking him questions." (Court File No. 72, Attachment 1, at ¶ 12).

During the rearraignment, Petitioner's counsel and the United States informed the Court that there was a plea agreement in this case (Court File No. 72, at 5-6). Petitioner was shown that plea agreement and the signature purporting to be his. This Court asked Petitioner if that was indeed his signature, and Petitioner acknowledged the signature as his own (Court File No. 72, at 6). In his petition, Petitioner notes the document held up by the Court was over twenty feet away and from that distance, Petitioner believed the signature to be his own (Court File No. 78, at 5).

Also during the rearraignment, the courtroom deputy read aloud count one of the indictment, including the allegation that it involved five kilograms or more of cocaine hydrochloride (Court File No. 72, at 8). Petitioner was then immediately asked "How do you plead to count one, Mr. Allen–guilty, or not guilty?" (*Id.*) Petitioner responded "Guilty." According to Petitioner, however, he was surprised to hear the courtroom deputy read count one of the indictment, because he had agreed to plead guilty only to count two. Upon hearing the wrong count, Petitioner states he "turned to Mr. Ortwein and asked him, is what the Judge saying right? Mr. Ortwein said yeah, just say yes, and that he had everything under control. Based on what Mr. Ortwein told me, I then agreed to what Judge Collier said and pled guilty." (Court File No. 78, Attachment 1, at ¶ 12).

3

Next, the Court asked the attorney representing the United States to advise Petitioner of the maximum sentence in his case. The Assistant United States Attorney responded: "Judge, based upon the amount of drugs involved in the conspiracy, Mr. Allen is looking at a mandatory minimum sentence of 10 years, a maximum of up to life, supervised release for a period of at least 5 years, a fine of up to $4 million, and a special assessment of $100." (Court File No. 72, at 9). The record does not indicate Petitioner objected to this reference of a mandatory minimum sentence of ten years or this repeated reference to a charge of conspiracy (*Id.*). Petitioner contends he remained silent and did not object based on the advise of his counsel (Court File No. 78, Attachment 1, at ¶ 12).

Petitioner asserts he was again instructed by his counsel "to just agree with the Judge" during his sentencing hearing on October 24, 2003 (Court File No. 72, Attachment 1, at ¶ 13). Petitioner states that during the sentencing hearing, "Judge Collier then began talking about amounts of cocaine with the Government, over and above the two (2) kilograms I signed for in my plea agreement. I then turned to Mr. Ortwein and asked him: Lee, what is he talking about? Mr. Ortwein then just stepped away from me. I said again, in a louder voice: Lee, I didn't have but two (2) kilograms of cocaine. What's all this other stuff? I signed for two (2) kilograms of cocaine. Mr. Ortwein stated he was going to take care of all of the mistakes for me in my appeal, and to just be quiet."

Finally, Petitioner asserts his wife noticed in December 2003, while going through his legal papers, that the signature found on the plea agreement did not appear to be Petitioner's. After his wife sent Petitioner a copy of that plea agreement, Petitioner states he realized it was not his own. From this, Petitioner asserts that someone forged his name to the plea agreement which showed him agreeing to plea guilty to count one of the indictment (Court File No. 72, Attachment 1, at ¶14).

4

Petitioner presented this argument to the Sixth Circuit on appeal. There, Petitioner argued his plea was not knowing and voluntary and the plea agreement signature was forged. The Sixth Circuit concluded "the record indicates that [Petitioner] was shown the plea agreement at his plea hearing and he acknowledged his signature on the plea agreement without questioning its validity." (Court File No. 76, at 2). The Sixth Circuit affirmed Petitioner's sentence, and he now brings this petition for collateral relief.

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged, in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a

non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## III. DISCUSSION

### A. Voluntariness of the Guilty Plea

Petitioner first argues his guilty plea was not voluntarily and knowingly made and that his signature on the plea agreement was forged. According to Petitioner, he signed a plea agreement stating he would plea guilty to count two of the indictment, which alleged possession with intent to distribute five hundred or more grams of cocaine hydrochloride (Court File No. 78, at 5). The plea agreement accepted and adopted by this Court, however, shows Petitioner agreeing to plea guilty to count one of the indictment, which alleged conspiracy to distribute five kilograms or more of cocaine hydrochloride (Court File No. 35). In addition, at his rearraignment hearing, Petitioner pleaded guilty to count one of the indictment (Court File No. 72, at 8). Petitioner argues he did not voluntarily and knowingly plea guilty to count one of the indictment, because he believed he was pleading guilty to count two.

It is well established that issues which are presented and considered on direct appeal cannot be litigated again in a subsequent § 2255 proceeding absent exceptional circumstances or an

6

intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir.1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir.1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir.1996). In this case, Petitioner has established no exceptional circumstances or identified any change in the law which would permit this Court to reopen this issue. Rather, he merely repeats the same arguments which were decided by the Sixth Circuit. Therefore, the Sixth Circuit's conclusion that Petitioner's plea of guilty was knowing and voluntary will stand.

### B. Ineffective Assistance of Counsel

Petitioner first contends his counsel was ineffective because his counsel induced him into signing one plea agreement and then allowed a different plea agreement to be filed with the Court. Petitioner argues this scheme was implemented by his counsel's repeated instructions to remain silent during his rearraignment hearing and to merely agree with anything this Court asked of him. Second, Petitioner asserts his counsel was ineffective because he misrepresented the "sentencing exposure" he would be facing upon pleading guilty.

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: 1) counsel's performance was deficient–that is, counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and 2) counsel's deficient performance prejudiced the defense–that is, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88.

If Petitioner's assertions were believed–that is, his counsel either forged his signature on a different plea agreement or knowingly allowed this to occur–then there is little doubt a violation of the first *Strickland* prong would exist. Because the Court finds these assertions lack credibility, however, the Court has determined counsel's conduct was not deficient. Therefore, Petitioner's claim fails the first prong of the *Strickland* test.

The picture painted by Petitioner lacks credibility, because it contradicts Petitioner's own behavior when he appeared before this very Court for his rearraignment. During the rearraignment, this Court showed Petitioner the original plea agreement submitted by the United States. While showing Petitioner this document, the Court asked, "Is this your signature, sir?" Petitioner responded, "Yes, sir." (Court File No. 72, at 6). Thereafter, the deputy clerk read count one of the indictment, which indicated a conspiracy to distribute five kilograms or more of cocaine hydrochloride rather than possession of five hundred grams or more of the same. The deputy clerk asked Petitioner how he pleaded, and Petitioner immediately responded "Guilty." (*Id.* at 8). Immediately afterwards, the Court itself advised Petitioner again that he was charged with a conspiracy to distribute more than five kilograms of cocaine hydrochloride. Petitioner again advised the Court he understood the charge to which he was pleading guilty (*Id.* at 9).

Petitioner argues that during these interchanges, he turned to his counsel because he believed the courtroom deputy and this Court's statements were wrong. Though the Court has no personal memory of Petitioner's rearraignment, it is not the practice of this Court to accept guilty pleas from anyone who indicates hesitation. If Petitioner had repeatedly turned to his counsel when asked if he understood what he was pleading guilty to, the transcript of his responses would not read so cleanly. More likely, the transcript of Petitioner's responses would have indicated his own

8

uncertainty, additional inquiry from this Court ensuring Petitioner understood the charge to which he was pleading, or at the very least, the transcript would indicate the pauses required between question and answer for the Petitioner to have conferred with his counsel and received the alleged reassurances that he should merely agree with the Court.

Moreover, Petitioner's assertions lack credibility, because they are directly contradicted by an affidavit submitted by his own former counsel, Mr. Ortwein (Court File No. 80, Attachment 1). In this affidavit, Mr. Ortwein states there never was a plea agreement under which Petitioner would plead guilty to count two of the indictment (*Id.* at ¶ 18).

Petitioner's second argument is that his counsel provided ineffective assistance because he misrepresented the "sentencing exposure" Petitioner would face if he pleaded guilty. Even if true, such a misrepresentation did not prejudice Petitioner, because Petitioner was advised at the rearraignment that the statutory minimum sentence he could receive was ten years (Court File No. 72, at 9). At that time, Petitioner was asked if he was still willing to plead guilty, and Petitioner maintained his intention to do so. Later, that same statutory minimum sentence of ten years was in fact the sentence Petitioner actually received. Therefore, even if the Court were to find Petitioner's assertion credible, such ineffective assistance would not have prejudiced Petitioner, as required by the second prong of the *Strickland* test.

In this case, Petitioner has the burden of establishing the grounds for relief under § 2255. *See Caver*, 349 F.3d at 351. Petitioner, however, has only made self-serving assertions in his personal affidavit and in his petition for relief. He has presented no other evidence which could allow this Court to find credibility in the scenario he alleges. Therefore, Petitioner has failed his burden of showing the conduct of his counsel was deficient under the first prong of the *Strickland*

9

test. In addition, even if the Court found credible Petitioner's recollection of his counsel's advice concerning his "sentencing exposure," these statements did not prejudice Petitioner as required under *Strickland*. Therefore, Petitioner is not entitled to relief under § 2255 for ineffective assistance of counsel.

## IV. CONCLUSION

For the reasons stated above, Petitioner's sentencing was not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 78).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**